**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK GOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 7247 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| VILLAGE OF GLENWOOD, and | ) | |
| SERGEANT JOSEPH WILLETT | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

After being pulled over by Sergeant Joseph Willett for failure to signal, Plaintiff Derrick

Golden was charged and prosecuted for aggravated UUW, failure to signal, suspended driver's

license and no insurance. Once the criminal charges resolved in Golden's favor, he filed this

lawsuit against Defendants Village of Glenwood (the "Village") and Willett, in his individual

capacity, alleging violations of his civil rights under 42 U.S.C. § 1983, and, as is relevant to this

opinion, a state law claim for malicious prosecution. Defendants have moved to dismiss a

portion of Golden's malicious prosecution claim, strike the paragraphs of the complaint relating

to that part of Golden's malicious prosecution claim, and strike and dismiss Golden's prayer for

punitive damages under his malicious prosecution claim. Defendants' motion [16] is granted.

The Court dismisses as time-barred Golden's malicious prosecution claim based on his criminal

case that was dismissed on February 13, 2013, and strikes the paragraphs of Golden's Complaint

which give rise to this dismissed claim as immaterial to Golden's remaining causes of action.

Additionally, the Court dismisses Golden's prayer for punitive damages against Willett

stemming from his malicious prosecution claim finding that § 2-102 of the Illinois Tort

Immunity Act ("ITIA") immunizes Willett from such damages.

Golden was driving home from a shooting range when Willett pulled him over under the false pretenses that Golden failed to use a turn signal and was driving with a suspended license. Without legal justification, Willett ordered Golden out of his car and proceeded to search the car. Golden, who was legally authorized to own a gun and had a valid Firearm Owners Identification card, had a gun in the trunk of his car. Golden had the unloaded gun stored in a case and the ammunition stored in the glove box of the car. Neither the gun nor the ammunition were in plain view or immediately accessible to Golden when he was in the car. Nevertheless, Willett falsely claimed that Golden's gun had been uncased, loaded, and immediately accessible to Golden in the car and drafted false reports containing this information. Ultimately, Willett charged Golden with unlawful use of a weapon ("UUW"), along with several traffic violations ("Case #1"). These charges were dismissed by an order of *nolle prosequi* on February 13, 2013. On July 16, 2013, a grand jury returned an indictment against Golden based on the same facts underlying Case #1, charging him with three counts of UUW ("Case #2"). These charges were subsequently dismissed by an order of *nolle prosequi* on September 17, 2013. Golden filed his Complaint on September 17, 2014.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive

---

[1] The facts in this section are taken from Golden's Complaint and presumed true for the purposes of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.    Statute of Limitations

Defendants move to dismiss Golden's malicious prosecution claim relating to Case #1 as time-barred.[2] The statute of limitations is an affirmative defense that need not be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint).

The Illinois Tort Immunity Act ("ITIA") governs civil tort claims filed against local government employees, including claims for malicious prosecution. Under the ITIA, claims are subject to a one-year statute of limitations. 745 Ill. Comp. Stat. 10/8-101(a); *Shelton v. Wright*, No. 09 C 6413, 2011 WL 856811, at *3 (N.D. Ill. Mar. 9, 2011). For claims of malicious prosecution, this one-year period begins running "on the date the case was terminated in the plaintiff's favor." *Shelton*, 2011 WL 856811, at *3 (citing *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459, 213 Ill. 2d 94, 289 Ill. Dec. 679 (2004)). Defendants contend that Case #1 was

---

[2] Defendants do not seek to dismiss Golden's malicious prosecution claim as to Case #2.

terminated, and the statute of limitations began running, on February 13, 2013 when the court

entered an order of *nolle prossequi*, dismissing the case. Because Golden filed his malicious

prosecution claim on September 17, 2014, Defendants assert that Case #1 is time-barred. Golden

responds that because one of the charges brought in Case #1 was brought again in Case #2, the

*nolle prosequi* order entered in Case #1 did not finally terminate that criminal proceeding against

Golden. Therefore, it was not until the court entered an order of *nolle prosequi* with respect to

Case #2, without further criminal charges being brought against Golden, that his malicious

prosecution claim accrued. Because Case #2 was finally terminated on September 17, 2013, and

Golden's complaint was filed on September 17, 2014, Golden contends that the entirety of his

malicious prosecution claim is timely.[3]

Illinois case law is clear that the entry of a *nolle prosequi* order in a criminal case

"terminates the charge and requires the institution of a new and separate proceeding to prosecute

the defendant." *Ferguson*, 820 N.E.2d at 460 (citing *People v. Sanders*, 407 N.E.2d 951, 959, 86

Ill. App. 3d 457, 41 Ill. Dec. 453 (1980)); *Shelton*, 2011 WL 856811, at *3. Such an order is

qualitatively different from an order striking a case with leave to reinstate ("SOL"), which allows

the "charges [to] continue to lie against the accused, albeit in a dormant state." *Id*. at 459.

"Because an SOL order does not finally dispose of criminal proceedings," it "[does] not result in

a termination, favorable or otherwise, of [a] criminal case." *Id*. at 459 – 60. As such, a

defendant's malicious prosecution claim does not accrue upon the entry of an SOL order. *See id.*

at 460. A *nolle prosequi* order, on the other hand, terminates a criminal proceeding, giving rise

to a claim for malicious prosecution. *See Id*. at 460 (citing *Swick v. Liautaud*, 662 N.E.2d 1238,

1242 – 43, 169 Ill. 2d 504, 215 Ill. Dec. 98 (1996)); *Shelton*, 2011 WL 856811, at *4. Golden

---

[3] The Parties do not dispute that a *nolle prosequi* order, if it terminates a plaintiff's case, does so in the plaintiff's favor. Therefore, the Court's review is limited to whether the entry of the *nolle prosequi* order in Case #1 was, in fact, a final termination.

concedes that "normally abandonment of proceedings via the entry of a *nolle prosequi* functions as a final termination of the criminal case such that the statute of limitations on a malicious prosecution claim would start to run." Doc. 19 at 5. Indeed, Golden admits that the entry of the *nolle prosequi* order in Case #2 functioned as a final termination of the matter. Regardless, without providing any legal justification, Golden asks the Court to find that because one of the charges brought in Case #1 was brought again in Case #2, the entry of the *nolle prosequi* in Case #1 did not function as a final termination of that matter.

However, the Court finds that Illinois law indisputably establishes that a *nolle prosequi* order finally terminates a proceeding, thereby triggering the statute of limitations for a malicious prosecution claim *based on that proceeding*. *Ferguson*, 820 N.E.2d at 460; *Swick*, 662 N.E.2d at 1242 – 43; *Shelton*, 2011 WL 856811, at *4. The Court is unaware of any legal authority which would support Golden's argument that bringing the same charge in a subsequent prosecution somehow renders inoperative a *nolle prosequi* order entered in a prior prosecution. Furthermore, the facts clearly demonstrate that Case #1 and Case #2 were two separate proceedings. In Case #1, Willett filed a criminal complaint, initiating the case against Golden. Case #2, on the other hand, resulted from an indictment by a grand jury. The mere fact that a UUW charge was prosecuted in both cases does not nullify the *nolle prosequi* order entered in Case #1. Accordingly, because Case #1 was nol-prossed on February 13, 2013, and Golden did not file the present complaint until September 17, 2014, Golden's malicious prosecution claim based Case #1 is time-barred.

## II.     Motion to Strike Malicious Prosecution Allegations

Having dismissed Golden's malicious prosecution claim as to Case #1, the Court turns to Defendants' motion to strike paragraphs 33 – 35 of Golden's Complaint (which constitute the

allegations giving rise to Golden's malicious prosecution claim as to Case #1) as immaterial. "Rule 12(f) provides that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Rule 12(f)). The Court notes that while Golden opposed Defendants' partial motion to dismiss his malicious prosecution claim with regard to Case #1, Golden did not oppose Defendants' motion to strike the paragraphs relating to that claim. Golden thereby forfeits the issue. *Copeling v. Ill. State Toll Highway Auth.*, No. 12 C 10316, 2014 WL 540443, at *2 (N.D. Ill. Feb. 11, 2014) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)) (forfeiture occurs "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"). Because paragraphs 33 – 35 of Golden's Complaint relate only to the portion of a claim that has been dismissed and are immaterial to Golden's remaining causes of action, the Court strikes the paragraphs as immaterial.

## III.    Punitive Damages Claim[4]

As previously discussed, Willett's tort liability is governed by the ITIA. *West v. Krikham*, 588 N.E.2d 1104, 1106, 147 Ill. 2d 1, 167 Ill. Dec. 974 (1992). Under the ITIA, a government employee is "liable in tort unless immunized based on specific governmental functions enumerated in the Act." *Reese v. May*, 955 F. Supp. 869, 873 (N.D. Ill. 1996) (citing *Eck v. McHenry*, 604 N.E.2d 1109, 1114, 237 Ill. App. 3d 755, 178 Ill. Dec. 586 (1992)).

---

[4] Defendants move to strike and dismiss Golden's prayer for punitive damages included in his malicious prosecution claim. As previously stated, "Rule 12(f) provides that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting*, 554 F.3d at 1141 (quoting Rule 12(f)). However, Defendants do not contend that Golden's prayer for punitive damages should be dismissed as redundant, immaterial, impertinent, or scandalous. Rather, Defendants argue that the ITIA immunizes Willett from such claims. As such, the Court construes this argument as one made pursuant to Rule 12(b)(6) and analyzes it accordingly.

Defendants assert that § 2-102 of the ITIA immunizes Willett from liability for punitive damages stemming from a malicious prosecution claim. Section 2-102 of the ITIA provides that:

> [N]o public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 Ill. Comp. Stat. 10/2-102. Without providing a substantive response as to why § 2-102 does not immunize Willett from Golden's punitive damages claim, Golden cites to a string of cases within this jurisdiction which allegedly stand for the proposition that § 2-102 does not immunize officers sued in their individual capacities or officers who engaged in deliberate misconduct.

The Court rejects Golden's contention that § 2-102 does not apply to officers sued in their individual capacity. First, the plain language of the statute allows suits to be brought against public officials both "directly or indirectly." 745 Ill. Comp. Stat. 10/2-102. Second, the cases cited by Golden in support of this conclusion either rely on the wrong section of the statute or lack substantive analysis of the issue. *Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 738 (N.D. Ill. June 10, 2004) (court denied motion in limine finding "cited law does not state that punitive damages may not be assessed against police officers"); *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1029 (N.D. Ill. 2003) (court denied motion to dismiss punitive damages claim "[b]ecause the parties [ ] spent so little time [briefing] the issue."); *Bedenfield v. Shultz*, No. 01 C 7013, 2002 WL 1827631, at *10 (N.D. Ill. Aug. 7, 2002) (citing to two cases from the jurisdiction, court summarily concluded that the ITIA "does not shield police officers from punitive damages when they are sued in their individual capacity."); *McCray v. Hermen*, No. 99 C 1495, 2000 WL 684197, at *3 (May 23, 2000) (relying on portion of the statute discussing a "public entity" rather than a "public official," court held that § 2-102 did not shield officers sued in their individual capacity from punitive damage liability).

Instead, the Court adopts the reasoning espoused in *Reese* for determining whether § 2-102 immunizes a police officer from a claim for punitive damages. The court in *Reese* determined that in order for a defendant to establish that he is immune from liability for punitive damages under § 2-102, a defendant must establish: (1) that he is a public official, and (2) that he was serving in an "'official executive, legislative, quasi-legislative or quasi-judicial capacity' when [he] engaged in the actions that allegedly resulted in the plaintiff's injury." *Reese*, 955 F. Supp. at 873 (quoting § 2-102); *see also McNamara v. Foley*, No. 97 C 4944, 1998 WL 409412, at *8 – 9 (N.D. Ill. July 15, 1998). For purposes of § 2-102, a "public official" is someone "who exercises discretion in the performance of uniquely governmental functions." *Reese*, 955 F. Supp. at 875; *McNamara*, 1998 WL 409412, at *9. The Court finds that Willett was a public official in that he was clearly exercising discretion in the performance of uniquely governmental functions when, acting as a police officer, he decided to pull Golden over, search Golden's car, and sign a criminal complaint charging Golden with aggravated UUW, among other charges. *See Reese*, 955 F. Supp. at 875 (finding that a detective's decision to sign a criminal complaint required a "discretionary determination that the information he received…was sufficient to constitute probable cause to arrest").

Likewise, Willett was serving in an official executive capacity when he engaged in the conduct that ultimately gave rise to Golden's alleged injuries. "A police officer who is endowed by executive authority with the power to effectuate and enforce the law, clearly acts in an 'executive' capacity." *Reese*, 955 F. Supp. at 877. Willet was acting in an executive capacity as a police officer when he pulled Golden over, searched Golden's car, arrested, and prosecuted Golden. *See id.* (holding officer acted in an executive capacity when he pulled over the defendant for a traffic violation and investigated and prosecuted a defendant); *see also Jimenez v.*

8

*Herrera*, No. 95 C 1956, 1997 WL 102551, at \*6 (N.D. Ill. Mar. 6, 1997) (finding officer's actions in arresting and prosecuting plaintiff were "clearly governmental functions involving the exercise of discretion in his official capacity as a police officer"). The Court also notes that Golden alleges in his Complaint "[a]t all times relevant to [his] Complaint, Defendant-Officer Willett was acting in the course and scope of his employment, under color of state law, ordinance and/or regulation." Doc. 1 ¶ 6. The Court reads Golden's Complaint to concede that Willet is a public official, acting in an executive capacity, at the time he engaged in actions that caused Golden's injuries.

Additionally, the Court declines to read a bad faith exception into § 2-102. To do so would violate the statute's plain language. *Reese,* 955 F. Supp. at 875 ("declin[ing] to interpolate a 'willful and wanton' exception"); *see also Winston v. O'Brien*, 773 F. 3d 809, 813 (7th Cir. 2014) (under Illinois law, the language of a statute "is to be given its plain, ordinary, and popularly understood meaning"). Moreover, a necessary element of a claim for malicious prosecution is "the presence of malice." *Joiner v. Benton Comm. Bank*, 411 N.E.2d 229, 232, 82 Ill. 2d 40, 44 Ill. Dec. 260 (1980) (quoting *Ritchey v. Maksin*, 376 N.E.2d 991, 993, 71 Ill. 2d 470, 17 Ill. Dec. 662 (1978)). As such, if the Court were to read a bad faith exception into § 2-102, a public official accused of malicious prosecution would never be immune from liability for punitive damages. Golden has not provided, and the Court is unaware of, any authority which would support such a conclusion. Because Willett is a public official who acted within his executive capacity at the time he engaged in activities that led to Golden's injuries, he is immune from punitive damages under § 2-102.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss [16] is granted.

Defendants' motion to dismiss Case #1 from Golden's malicious prosecution claim as time-barred is granted.  Defendants' motion to strike the corresponding paragraphs of Golden's Complaint as immaterial is granted.  Further, Defendants' motion to dismiss Golden's prayer for punitive damages stemming from his malicious prosecution claim is granted.


Dated: March 6, 2015

_____
SARA L. ELLIS
United States District Judge